UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ERNEST SANDERS, GLORIA COBBS, and CHRISTINE TUZZOLINO, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | No. 06 C 3971 |
| MID CITY SALON RESOURCES, LLC and DAVID MONTAGUE, | ) ) ) | Judge Joan H. Lefkow |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Ernest Sanders, Gloria Cobbs, and Christine Tuzzolino (collectively, "plaintiffs") brought suit against their former employer, Mid City Salon Resources, LLC ("Mid City"), and David Montague (collectively, "defendants"), alleging three counts of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 215(a)(3). On January 23, 2008, the court granted in part and denied in part defendants' motion for summary judgment. Now before the court is defendants' motion for Rule 11 sanctions. Defendants' motion is based on (1) defendants' allegation that plaintiffs' counsel deliberately maintained a claim—Cobbs's FLSA retaliation claim—that plaintiffs' counsel knew was frivolous and lacking in evidentiary support, and (2) for plaintiffs' counsel's conduct during discovery. Rule 11 provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Defendants' allegations regarding discovery stem from conduct by plaintiffs' counsel at two depositions: (a) defendants' deposition of plaintiff Cobbs and (b) plaintiffs' deposition of Antonio Romiro, a non-party. With respect to the latter, defendants allege that plaintiffs' counsel harassed and attempted to intimidate Romiro about his national origin and immigration status. Although such allegations of witness harassment are serious, they do not generally fall within the rubric of Rule 11, which requires that attorneys present pleadings, motions, and other *written* documents to the court only if they believe, after reasonably inquiry, that they have a sufficient basis in law and fact to support their claims and contentions.

Defendants' allegations regarding Cobbs's deposition, on the other hand, do relate to the validity of a claim—Cobbs's FLSA retaliation claim. The court granted summary judgment in favor of the defendants on that claim because plaintiffs failed to cite any competent evidence showing that Cobbs either had or expressed a good-faith belief that Mid City might be violating overtime laws.

As defendants correctly noted in their motion for summary judgment, in order to support a prima facie claim of retaliation under the FLSA, a plaintiff must show that she "report[ed]

conduct 'under' or 'related to' violations of the federal minimum wage or maximum hour laws, whether or not the employer's conduct did in fact violate those laws," and that she "had a good-faith belief that [the FLSA] might be violated." *Sapperstein* v. *Hager*, 188 F.3d 852, 857 (7th Cir. 1999). Plaintiffs' counsel is well aware that an FLSA claim requires a showing that, in plaintiffs' counsel's own words, "an employee . . . opposed any practice *made unlawful*" by the FLSA. Pls.' Resp. to Defs.' Mot. for Summary Judgment at 13 (emphasis added). However broad the proscriptions of the FLSA may be, plaintiffs have failed to present any evidence showing that Cobbs believed that Mid City was violating any laws related to overtime.

Cobbs allegedly inquired about overtime with her employers on two separate occasions—first with Montague on or about November 4, 2005 and then with Nancy Manna and Forest Colburn on November 8, 2005. As discussed in the court's January 23, 2008 memorandum opinion and order regarding summary judgment, Cobbs's deposition testimony concerning her alleged overtime complaint is at times unclear, with Cobbs referring to both "time and a half" and "double time," as well as "double time and a half." The court found that Cobbs's testimony is clear enough, however, about the nature of her inquiry, which was, in her words, about

> time and half, double time on Sunday used to give some companies. *It is not mandatory that they have to give it to you*, but it was just a question. It wasn't like you going to pay me. I'm going to make you pay me. No, it was a question. Are we going to get paid -- since we get time and a half on Saturday, do Sundays runs over to double time? He said no and that was the inventory.

Defs.' Statement, Ex. 2 (Cobbs's Dep., Pt. II), at 182–83 (emphasis added). This testimony indicates that when she inquired on November 4, 2005 about receiving overtime wages for working on Sunday, Cobbs did not have a good-faith belief that she was legally entitled to

3

double time wages; rather, she was inquiring about whether the company had a discretionary policy of paying double time on Sundays, which she understood not to be mandatory.

Later in Cobbs's deposition, while still under questioning by defendants' counsel, Christopher Garcia, Cobbs discussed her November 8 inquiry. She initially denied that she had brought up any overtime issues with Manna or Colburn at the November 8, 2005 meeting:

> Q.  At the meeting of November 8, 2005, you never brought up any overtime issues with Nancy Manna or Forest Coburn, correct?
> A.  It wasn't -- it really wasn't an overtime issue. It was just a question answered, no.
> Q.  Ma'am, did you bring up any overtime issues in the November 8, 2005 meeting with Nancy Manna or Forest Coburn?
> A.  No, I just spoke on it.

Defs.' Statement, Ex. 2 (Cobbs's Dep., Pt. II), at 188–89. At this point, however, plaintiff's counsel, Ernest Rossiello, interjected:

> MR. ROSSIELLO:  Wait a second.  You're not listening to his question.  Did the topic of overtime come up when you spoke to Nancy on that day?
> THE WITNESS:  Yes, about the inventory.
> MR. ROSSIELLO:  Then that's a yes answer.  You gave him a no answer.

*Id.* at 189. A short time later, Cobbs confirmed that she had merely asked Manna about the possibility of receiving double time:

> Q.  Did Nancy ever give a definitive answer whether or not they were going to pay double time for a Sunday?
> A.  She said no that they never did it.  To her knowledge they never paid double time for Sundays because --

*Id.* at 190. At this point, Rossiello again interjected:

> MR. ROSSIELLO:  Ms. Cobbs, I'm going to interrupt you.  We are talking about overtime, not double time.
> THE WITNESS:  I don't recall.  I'm just going to say I don't recall it.  I don't recall it.
> BY MR. GARCIA:
> Q.  You don't recall what now?
> A.  The double time.  I was talking about double time.  That's what I went in there for talking to Nancy when I just asked a question about the Sunday for double time.
> MR. ROSSIELLO:  You are talking about --
> MR. GARCIA:  Don't change your testimony.

4

>           MR. ROSSIELLO:  She's confused.
>           MR. GARCIA:  Wait a second.  She has given her answer.  You can rehabilitate her when I'm finished.
>           MR. ROSSIELLO:  All right.

*Id.* at 190–91.  Shortly thereafter, Cobbs again confirmed that she had merely asked Manna about the possibility of receiving double time:

>           Q.  And that's what you were specifically asking Nancy about which was double time, correct?
>           A.  Yes

*Id.* at 192.  At this point, Rossiello interjected yet again and explicitly instructed his client to change her testimony:

>           MR. ROSSIELLO:  Now, you're really trying to confuse her.  You're trying to confuse her.  She mentioned time and a half.
>           MR. GARCIA:  She just said double time.
>           MR. ROSSIELLO:  She's confusing double time with time and a half.  I don't want you to go on for 35 more pages.  *Ms. Cobbs, your case is about time and a half, not double time.*  It's in the court papers, do you understand that?
>           THE WITNESS:  Yes.
>           MR. ROSSIELLO:  *So forget about double time.*
>           MR GARCIA:  Don't coach her.  That is not appropriate.  We have been getting along throughout this.
>           MR. ROSSIELLO:  I'm not coaching her.  Do you understand?
>           THE WITNESS:  But I did mention the double time.  How many times do you want me to say double time?  I said the double time.
>           MR. ROSSIELLO:  *Your case is about overtime.  So forget double time.*
>           WITNESS:  Overtime.

*Id.* at 192–93 (emphasis added).  Rossiello never did rehabilitate Cobbs's testimony on this issue, though he suggests, in his comments on the record, that Cobbs had confused the term "double time" with the term "time and a half."  What is far more clear, however, is Cobbs's repeated testimony that she had asked her employers about receiving double time—a compensation rate she knew she was not legally entitled to—and that Rossiello understood how devastating that fact was to her FLSA retaliation claim.  To the extent that Cobbs shows signs of confusion in her testimony, it stems not from a misunderstanding about terminology but from her

5

own attorney's improper directives to "forget about double time" despite her conviction that she "did mention the double time."

Rule 11 imposes a duty on attorneys bringing and prosecuting a case to make a "reasonable inquiry" to ensure that the case is well grounded in fact and "warranted by existing law." Fed. R. Civ. P. 11(b)(3). Rule 11 specifically requires that, when an attorney files papers in which he or she presents factual contentions, those "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). At least as early as the day Cobbs testified in the depositions quoted above, plaintiffs' counsel must have known that Cobbs's FLSA retaliation claim had no legitimate factual basis. Indeed, Rossiello's conduct during that deposition leaves little room for doubt about whether he understood the damaging implications of his client's testimony regarding her inquiries about overtime. Nevertheless, Rossiello continued to press Cobbs's FLSA claim, insisting in his response to defendants' motion for summary judgment that Cobbs had "engaged in protected activity . . . when she asked about being paid overtime for working during inventory on the weekend." Pls.' Resp. to Defs.' Mot. for Summary Judgment at 13. The court thus finds that Rossiello acted in violation of Rule 11. *See Kapco Mfg. Co., Inc.* v. *C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) ("Rule 11 prohibits the filing of pleadings that are not reasonably based in the law or in fact and forbids the filing of pleadings that are interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increased cost of litigation."); *Salter* v. *Christ Hosp.*, No. 87 C 10864, 1990 WL 6828 (N.D. Ill. 1990) (awarding Rule 11 sanctions where plaintiff's counsel was aware of factual or legal infirmity of plaintiff's claim after plaintiff's deposition).

6

The court grants defendants' motion for Rule 11 sanctions [#105] and orders that plaintiffs' counsel, Ernest Rossiello, pay sanctions to the defendants in the amount of the reasonable cost of bringing their Rule 11 motion.[1] These amounts are to be paid by Rossiello, as an individual, and not by his clients. The court directs defendants to file within 21 days of this order a verified petition for fees reasonably incurred in litigating their Rule 11 motion so that the court may determine the total amount of the sanctions.

Dated: September 5, 2008     Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge

---

[1] *See Divane* v. *Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) (stating that "the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11" and "may direct the offending party to pay the other party's reasonable attorney's fees"); *see also Halim* v. *Great Gatsby's Auction Gallery, Inc.*, No. 03 C 8414, 2007 WL 773286, at *3 (N.D. Ill. Mar. 12, 2007) ("The purpose of Rule 11 sanctions is deterrence—a goal that may be met by imposing upon the sanctioned party the reasonable attorneys' fees and expenses that his opponent had to bear . . . .").